STATE ROAD COMMISSION OF WEST VIRGINIA *v.* CHESAPEAKE & OHIO RAILWAY COMPANY

(No. 8071)

Submitted November 22, 1934. Decided December 11, 1934.

*Homer A. Holt,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for relators.

*Fitzpatrick, Brown &. Davis* and ·*C. W. Strickling,* for respondent.

HATCHER, JUDGE:

The major portion of East Avenue in the city of South Charleston is occupied jointly by the public highway and an industrial track of the Chesapeake & Ohio Railway Company. The State Road Commission brought this proceeding in mandamus to require the railway company to remove its track from a portion of the Avenue which the commission deems necessary for use in improving the highway.

The chronological facts relating to this controversy are as follows: In 1908, the Kanawha Land Company, then the owner of that part of South Charleston embracing the parcel in litigation, platted its land into lots and streets, sold property with reference to the plat, and had a copy of the plat recorded. One of the streets of this division is East Avenue. In 1910, the Land Company constructed a railroad on and near the north side of the Avenue. There is some question as to the exact location of the original construction; but that question is not important herein as there has been no change in the location since 1914. In 1915, the public authorities paved a section of the Avenue south of and adjacent to the railroad, thereby for the first time recognizing the Avenue as a public thoroughfare. And in 1917, the Land Company quitclaimed to the respondent a strip eighteen feet wide along the northern side of the Avenue, which included the railroad.

The commission takes the position that the acts of the Land Company in 1908 constituted an irrevocable dedication of the Avenue to public use. The respondent replies that such acts constituted a mere offer of dedication to public use which the Land Company could withdraw or modify at any time before acceptance by the public authorities; that the construction of the railroad prior to 1915 constituted a modification of the offer; and that, as so modified, the offer was accepted.

The law is settled in this jurisdiction that no acts of a private owner can make a strip of land a public highway. Acts such as those of the Land Company herein constitute merely an offer of dedication to public use which must be accepted by the public authorities to make the dedication complete. Before acceptance the dedicator may withdraw the offer, or he may impose any reasonable condition on the offer which does not defeat the purpose of the dedication. A condition which is inconsistent with the legal character of the dedication or would take it from public control is void as against public policy, and upon public acceptance the dedication is not affected by the condition. 9 A. & E. Ency. Law, subject Dedication, page 75; 18 C. J., subject Dedication, secs. 62 and 64; Elliott, Roads and Streets (4th Ed.), sec. 163; Dillon, Municipal Corporations (5th Ed.), sec. 1075; McQuillin, *idem,* (2nd Ed.), sec. 1670; *Riddle* v. *Charles Town,* 43 W. Va. 796, 28 S. E. 831; *Point Pleasant* v. *Caldwell,* 87 W. Va. 277, 104 S. E. 610. The construction of a railroad by the dedicator in a proposed public street prior to public acceptance has been held to qualify the dedication. *Cohoes* v. *Delaware Co.,* 54 Hun. (N. Y.) 558, 7 N. Y. S. 885. That case was reversed in 134 N. Y. 397, but on other grounds. The right to operate a railroad in a public street has been held to be a reasonable condition of dedication. *Brunswick Rr. Co.* v. *Mayor,* 91 Ga. 573, 575, 17 S. E. 674; *Noblesville* v. *Rr. Co.,* 130 Ind. 1, 4-5, 29 N. E. 484. In each case, however, it was stated, in effect, that the railroad did not unduly restrict the public use of the highway; and that the railroad was subject to any reasonable regulation by the public authorities which tended to reduce the danger and inconvenience to the public. Consequently, while the construction of the railroad on the Avenue prior to its public acceptance constituted a dedicatory condition, yet that condition can be upheld only on the theory that it is completely subject to reasonable public regulation.

Counsel would treat the quitclaim of the eighteen-foot strip in 1917 as validly defining the width of the railroad right of way. That quitclaim could not confer on the

grantee any higher rights than the Land Company had in 1915 (when the avenue was accepted by the public authorities), because the right of further dedicatory qualifications ceased at that time. Elliott, *supra,* sec. 186. Prior thereto, the Land Company had not even attempted to define the boundaries of the railroad right of way by certain arbitrary lines. Therefore, the quitclaim can be taken merely as a conveyance of the bare easement, which is bounded, not by the trapezoidal lines selected by the Land Company in 1917, but "by the lines of reasonable enjoyment." 19 C. J., subject Easements, sec. 223.

The present location of the railroad prevents the necessary expansion of the paved portion of the highway to meet modern requirements. It appears from the evidence that there is a long unused space between the land now used by the railroad and the northern line of the Avenue. That space varies from a few to a number of feet in width. It is unavailable for highway purposes, yet it would serve *pro tanto* as a roadbed for the track equally as well as its present location. If the track be moved northward but a few feet and the unused space utilized as part of its roadbed, then the part vacated by the move could be used by the commission to expand the public roadway. The move would not seriously inconvenience the respondent. We are cognizant of the rule forbidding the alteration of a definitely established easement except by mutual consent of the owners of the dominant and the servient estates. But that rule applies to private parties, and must bow to the paramount interest of the public where the latter is concerned. Moreover, we presume that the location of the track so as to leave a space of no use to the Land Company and not available to the public was inadvertent and unintentional. We are accordingly of opinion that reasonable public regulation requires the move.

The writ, molded in conformity to this opinion, will issue.

*Writ awarded.*