No. 35,017

THE CITY OF RUSSELL, *Appellant*, v. THE RUSSELL COUNTY BUILDING
AND LOAN ASSOCIATION, *Appellee*.

(118 P. 2d 121)

Opinion filed October 11, 1941.

*Harold W. McCombs,* of Russell, for the appellant.

*Oscar Ostrum* and *Frances K. Seeley,* both of Russell, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for a mandatory injunction to enjoin defendant from maintaining a part of its building in what plaintiff alleged is a street, and to require its removal. A trial by the court resulted in judgment for defendant. Plaintiff has appealed.

The material facts are not seriously controverted and may be stated as follows: The city of Russell was incorporated in 1872 as a city of the third class, with an area of about 2,400 acres, only a part of which was platted into lots and blocks. It continued to be a city of the third class until early in 1939, when it became and since has been a city of the second class. On September 7, 1886, Herbert G. Laing and Lyman B. Beardsley, owners in fee of unplatted land within the corporate limits of the city adjacent to that which had originally been platted, filed in the office of the register of deeds of Russell county a plat thereof designated as "Laing and Beardsley's Addition to the City of Russell," a copy of which is set out herewith.

On the plat was the certificate of the surveyor, which reads:

"I hereby certify that I have surveyed and laid off into lots, 31 acres off the west part of the southwest quarter of the southwest quarter of section twenty-six (26), township thirteen (13) south of range fourteen (14) west of the 6th P. M., excepting two 1-acre tracts now owned by one Juliana Cooper, for description of which see Record F of Deeds of Russell County, at pages 139 and 192.

"All streets running east & west are extensions of the original streets of the city of Russell, 82½ feet wide. All streets, alleys, blocks, and lots are represented in figures and lines upon the accompanying map or plat.

"Survey established from a stone 1,320 feet north of the southwest corner of the above described section.          "RICHARD STROUT, *Civil Engineer.*"

Also the certificate of the owners, which reads:

"Know all men by these Presents:

"That Herbert G. Laing and Lyman B. Beardsley of the city of Russell in the county of Russell and state of Kansas, as owners of the property hereinafter described, have caused to be laid out and platted, as is certified to by the above-named Richard Strout, all of the west thirty-one (31) acres of the southwest quarter of the southwest quarter of section twenty-six (26), township thirteen (13) south, range fourteen (14) west of the 6th P. M., except two (2) one (1) acre tracts now owned by one Juliana Cooper, for the description of which see Record F of Deeds of Russell county at pages 139 and 192, situate in the city of Russell, county and state aforesaid, to be known as Laing & Beardsley's Addition to the said city of Russell, and that all streets and alleys described on said plat are for public use.

"In testimony whereof, the said parties have hereunto set their hands and seals this 7th day of September, 1886.          "HERBERT G. LAING,
"LYMAN B. BEARDSLEY."

This plat with its certificates was duly recorded. At the trial the record of the plat was used in evidence. The original plat appears not to have been before the court. The recorded plat shows an area outlined and with horizontal lines in red ink—black ink was used elsewhere on the plat—covering parts of lots 11 and 12 in block 2 and extending to the south of those lots, or the main portion of them.

The real controversy here is whether those lots were lengthened in part by this outlined and crossed area so that all the area is within the lots and the lots lengthened thereby, or whether the part of this area south of the north line of Third street continuing through the area is a part of the street.

At the time the plat was filed there was situated approximately on this area a house, the walls of which were built of native stone 18 inches thick. The second-story part of the house is 24 feet north and south and 30 feet east and west, with no basement, and is situated north of the north line of Third street. To the south of this main portion is a one-story wing 22 by 16 feet, with full basement. The stone wall between the two-story part of the house and the south wing extends from the basement floor straight up to the eaves of the second story of the main part of the house. About half of the south wing, or a little less, extends south of the north line of Third street, if that line runs through the area shown in the plat. At the time the plat was filed this house was occupied as a residence by Lyman B. Beardsley, one of the owners of the property who signed the certificate to the plat. Since then it has been occupied as a residence. Defendant took a mortgage on the property in 1925 to secure a loan, and in 1932 acquired title by a deed recorded April 13, 1934. In both the mortgage and the deed the property was described as lots 10, 11, 12 and 13 in block 2, in the addition.

Few, if any, houses were built in the block along this street until about 1938, in which year the street was paved. Since then a number of new houses have been built along the street, and they are occupied as residences, and a sidewalk has been built along the north side of the street which comes up to the building on the east and west sides, and stepping stones have been laid around the south end of the building for the use of pedestrians.

In the fall of 1939 a number of the owners of property in the vicinity of the building petitioned the governing body of the city to condemn all the south portion of the building, for the reason the south wing extends into the street, interferes with the sidewalk,

ruins the appearance of the block, and interferes with property values. In October, 1939, the governing body of the city passed a resolution which recited that the petition above mentioned had been presented and considered, that a committee appointed by the mayor to view the premises and investigate the matter had done so and made a report of its findings, and resolved:

". . . that the portion of the south wing of the house located on lots 11 and 12, in block 2 of Laing and Beardsley's Addition to the city of Russell, Kansas, which extends over, into and upon the north edge of Third street in said city, constitutes an encroachment upon said street, and an obstruction thereto, and the same is hereby declared to be a public nuisance, which should be removed forthwith at the expense of the owner of said property."

The city clerk was directed to deliver a copy of the resolution to defendant and to notify defendant "to remove said obstruction within a reasonable time," fixed at sixty days, and if that were not done the city attorney was authorized and directed to bring an action to abate the nuisance. Defendant did not remove that part of the building alleged to be in the street, hence this action. The trial court found:

". . . that the land occupied by the residence belonging to defendant, on lots eleven (11) and twelve (12), in block two (2), in Laing and Beardsley's Addition to the city of Russell, Kansas, was never dedicated as a public street; that the north line of Third street, does not extend in a straight line east and west; that there is a jog in said street to the south of approximately five (5) feet, where said residence belonging to defendant is located; that no part of said residence property extends into or upon Third street adjacent thereto."

Judgment based upon these findings was rendered for defendant.

The sections of the statutes in force at the time the plat was filed necessary to be considered read as follows:

"When any city or town, or an addition to any city or town, shall be laid out, the proprietor or proprietors of such city or town, or addition, shall cause to be made out an accurate map or plat thereof, particularly setting forth and describing: *First,* All the parcels of ground within such city or town, or addition reserved for public purposes, by their boundaries, course and extent, whether they be intended for avenues, streets, lanes, alleys, commons, or other public uses; and, *second,* All lots intended for sale, by numbers, and their precise length and width. (Laws 1868, ch. 78, § 1, amended in respects not here material, and now G. S. 1935, 12-401.)

"Such maps and plats of such cities and towns, and additions, made, acknowledged, certified, filed and recorded with the register, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named or intended for public uses in the county in which such city or town, or

addition, is situate, in trust and for the uses therein named, expressed or intended, and for no other use or purpose." (Laws 1868, ch. 78, § 6, now G. S. 1935, 12-406.)

There is no contention in this case that the plat in question was not prepared and filed in harmony with the section of the statute first above quoted. The effect of the filing of the plat was to vest in the county the title and in the city the control of the street. No contention is made otherwise. If a portion of this house is in the street it is an encroachment upon the street, a purpresture, and is in law a nuisance per se (*City of Emporia v. Humphrey,* 132 Kan. 682, 297 Pac. 712), and the city is proceeding properly by a mandatory injunction to have it removed. No contention is made to the contrary. The fact that the house was built before the addition was platted is not material. The defendant in the trial court, appellee here, never has taken the position that this fact entitled it to judgment in this case as a matter of law, but that it is a fact to be considered in determining the intention of the dedicators.

The rule is well settled that in construing a plat of city property the general rules to be followed are the same as for the construction of deeds or other instruments granting or pertaining to real property. The purpose of construction is to determine the intention of the dedicator. The instrument must be considered as a whole. All lines, figures, letters and records used on the plat and in the certificates, which are a part of it, must be considered. The construction should be fair and reasonable. (*City of Evansville v. Evansville Boat Club,* [Ind. App.] 27 N. E. 2d 389; *Matthews v. Parker,* 163 Wash. 10, 299 Pac. 354, 356; *Byam v. Public Service Co.,* 328 Mo. 813, 41 S. W. 2d 945; Elliott, Roads and Streets, 4th ed., § 130; 8 R. C. L. 896; 26 C. J. S. Dedication, § 49, 16 Am. Jur. 369; and cases collected in Am. Dig., Dedication, § 46.)

Generally speaking, all ambiguities must be construed most strongly against the dedicator and in favor of the public. (*Hitchcock v. City of Oberlin,* 46 Kan. 90, 94, 26 Pac. 466; *Larkey v. City of Los Angeles,* 70 Cal. App. 635, 233 Pac. 991; *City of Chicago v. Hogberg,* 217 Ill. 180, 75 N. E. 542.)

In this state we have had two cases involving specific attempts at reservations. In *Tousley v. Galena M. & S. Co.,* 24 Kan. 328, a mining company owned land in fee, which it platted, but in its certificate attempted to reserve to itself all the minerals under the surface of the streets and alleys. It sold designated lots, which it

conveyed by a general warranty deed without reservations. The grantee put down a mine on the lots and was taking coal from under the street, which the mining company sought to enjoin. The court did not find it necessary to decide whether the reservation attempted to be made was valid, but reasoned thus: If the reservation were not valid the fee was in the county and the mining company had no interest in the minerals; if the reservation was valid the rights of the mining company passed by its warranty deed to the grantee, hence it had no further right to the minerals.

In *Wood v. National Water Works Co.*, 33 Kan. 590, 7 Pac. 233, the fee owner of property filed a plat in which he specifically reserved all rights and privileges except the right to travel over the streets and alleys. A water company, acting under a franchise from the city, laid a water main along the street. The dedicator sued in ejectment and for, damages. It was held its attempted reservation was void.

The latter case applies the well-settled rule that an attempted reservation by the dedicator of private rights in the street is void, and the dedication stands unimpaired by the attempted reservation. (*West Texas Utilities Co. v. City of Spur*, 38 F. 2d 466; *City of Jacksonville v. Shaffer et ux*, 107 Fla. 367, 144 So. 888; *Hooper v. Haas*, 332 Ill. 561, 164 N. E. 23; 63 A. L. R. 658; *Grosse Pointe Shores v. Ayres*, 254 Mich. 58, 235 N. W. 829; *Gwin v. City of Greenwood*, 150 Miss. 656, 115 So. 890, 58 A. L. R. 849; *Hulett v. Sea Girt*, 106 N. J. E. 118, 150 Atl. 202; 108 N. J. Eq. 309, 154 Atl. 741. *Road Commission v. Railway Co.*, 115 W. Va. 647, 177 S. E. 530; *City of Birmingham v. Graham*, 202 Ala. 202, 79 So. 574.)

Hence, if the dedicators in this case, by the area outlined in red on the plat, attempted to reserve, for the private use of both or one of them, that part of the area shown to be south of the north line of the street, such attempted reservation is void, for it obviously interferes with the city in constructing sidewalks and otherwise using that part of the street for a public highway, or street purposes.

The public is presumed to accept the grants of streets, alleys and other public grounds shown on the plat. No formal acceptance is necessary. (*Cemetery Association v. Meninger*, 14 Kan. 312, 316; *Gadarl v. City of Humboldt*, 87 Kan. 41, 123 Pac. 764; *Manning v. House*, 211 Ala. 570, 100 So. 772, 774; *City of Birmingham v. Louisville & N. R. Co.*, 297 Fed. 816.)

The question whether an owner intended to dedicate the land in

question to the public use is one of fact, but the courts do not look for an intention hidden in the mind of the owner; it must be one that is manifested by his act. (*Raymond v. Wichita,* 70 Kan. 523, 533, 79 Pac. 323; *Gadarl v. City of Humboldt,* supra; *Kansas City v. Burke,* 92 Kan. 531, 535, 141 Pac. 562; *Minton v. Smith,* 102 Okla. 79, 227 Pac. 75.)

In deciding the case the court stated:

"It hardly seems reasonable . . . that a man owning property such as this building of a permanent nature, and one that couldn't be moved, would deliberately and intentionally donate the ground upon which that building was standing for use as a public street, . . . and the court will hold in this case that the ground occupied by this building, and which apparently extends into the street as it would be if the normal lines were extended in a straight line from one corner of the block to the other, was never dedicated to the public use, and it remains the private property of the donor, his grantees and assigns."

Appellant argues this line of reasoning is speculative in the extreme; that one might just as well assume an opposite intent by reasoning as follows: The dedicators, by platting the land made it possible to sell lots; had they not hoped to do so they would not have platted it; if lots were sold the profits arising from such sale would amply repay them for removing the south wing of this building, and not to move it would be a detriment to the sale of the lots, being unsightly, interfering with sidewalks and parking, and with the view. We think we may lay to one side both of these suggested interpretations. The court is not concerned with the secret motives of dedicators. A judgment cannot rest upon speculation as to what might have been the secret motives of the dedicators.

Appellee calls attention to the statement in the surveyor's certificate: "All streets running east and west are extensions of the original streets of the city of Russell, 82½ feet wide," and further calls attention to the fact that on the plat First street is shown to be only 43½ feet wide for a part of a block, and argues that the general statement of the two cannot be construed literally. By similar reasoning it may be observed that where there was a difference in the width of First street that difference was shown, and had the dedicators intended a difference in the width of Third street they would have made a similar showing. The dedicators' certificate excepts two 1-acre tracts from the generally described thirty-one acres platted. We are told in the argument that this un-

divided square south of First street shows the locations of those two tracts, which obviously accounts for the narrowing of the street at that place. There are no figures on the plat indicating Third street to be less than 82½ feet wide at any point.

Appellee calls our attention further to the recitation in the certificate of the engineer, "All streets, alleys, blocks and lots are represented in figures and lines" upon the plat. Appellee stresses the words "lines," and this was also adverted to by the court in announcing his decision, and attention is called to the fact that there appears to be a break in the north line of Third street at the place where the area outlined in red with horizontal lines is shown upon the plat. Whether that is so upon the original plat is of course unknown, and also what is meant by it is not explained by anything else in the plat. To permit that to be controlling it would be necessary to ignore the word "figures" in the certificate. The phrase is "figures and lines." The figures definitely show that each of the lots in block 2 is 122 feet long and 50 feet wide, and that Third street is 82½ feet wide for its entire length. The statute in force when the plat was filed, previously quoted, specifically required that the plat should show "All lots intended for sale, by numbers, and their precise length and width." If this statute is to be given any force, as we think it must, the length of lots 11 and 12 is 122 feet and not that distance plus five or more feet.

In this case there is no conflict in the evidence; in fact, there is practically nothing in the evidence which has a material bearing upon the intention of the dedicators other than the plat itself. Neither the surveyor nor the dedicators testified. We assume they are not living. No one else who had anything to do with platting the land and its use immediately before or after gave any testimony which would throw any light upon the intention of the dedicators. It is conceded that the house was built before the dedication, but there is no contention that affects any legal question involved, the only argument being that it may have had some effect upon the intention of the dedicators. The fact that the street has been paved and sidewalks laid, and that residents in the vicinity object to the house being partly in the street, for the reasons stated in their petition to the governing body of the city, is not controverted.

Neither in the certificate of the surveyor nor of the dedicators is any suggestion made that Third street is narrowed, or that lots 11 and 12 are lengthened, by reason of the fact of the location of the

house. There was no attempt on the part of the dedicators in their certificate to reserve for their own use a small portion of Third street, shown upon their plat to be 87½ feet wide throughout the block. Even if such a reservation had been made perhaps it would have had no legal effect, for it is well settled that one cannot dedicate a street and reserve rights which interfere with the public use of the street. Such a reservation is repugnant to the grant and therefore void.

The result is there is no evidence in the record to sustain the finding of the trial court that the dedicators never intended to dedicate as a street any of the ground on which the residence was situated. The reason given for the finding is untenable. The only competent evidence is to the contrary. The judgment of the court below must be reversed with directions to enter judgment for plaintiff. It is so ordered.

DAWSON, C. J. (dissenting): The evidence inherent in the physical facts and sequential circumstances makes it clear that the dedicators of the streets and alleys for public use in Laing and Beardsley's Addition did not intend to grant to the public the few square feet of ground on which rested a part of the foundation of the residence of Beardsley, one of the dedicators. Moreover, in law and in logic the existence of an encroachment or purpresture on a public street presupposes there was a public street which could be encroached upon. In this case there was no street, no public dedication of any of this land, antecedent to the erection of the Beardsley residence. I therefore dissent.