Paul B. NUNN, Plaintiff in Error,

v.

Marvin R. OSBORNE, Defendant in Error.

No. 40768.

Supreme Court of Oklahoma.

July 19, 1966.

Bailey & Whitlock, Norman, Hirsh & Harkin, Oklahoma City, Paul Johanning, Oklahoma City, for plaintiff in error.

Luttrell, Luttrell, Pendarvis & Livingston, Norman, for defendant in error.

PER CURIAM.

Plaintiff Nunn filed this action on August 30, 1962, seeking an injunction to prevent defendant from obstructing or diverting the flow of water in a stream that originated north of defendant's land and trending southward, entered and crossed plaintiff's tract.

The petition alleges that defendant has constructed a system of dams upon his property which prevented and obstructed the natural flow of water in the stream to such an extent that it "became dry" upon plaintiff's land. The petition also alleges that the stream normally flows almost continually and that plaintiff needs its waters for his home, his livestock, and to preserve trees that line its banks. Irreparable damage to plaintiff is alleged unless defendant is enjoined from damming and diverting the flow of the stream.

Defendant's answer alleges that the stream is "only the bed of an intermittent water course which is dry most of the time" and that it has been so for many years; that defendant's dams were constructed, and plaintiff had actual or constructive knowledge of their existence, prior to the time plaintiff purchased his tract; that defendant's use of the waters was reasonable and within his rights as an owner of the land upon which said water existed and flowed and that nothing had been done by said defendant which would constitute an unreasonable interference with plaintiff's rights as an adjoining landowner; that defendant's purpose in constructing the dams was to impound water for use in irrigation and other similar purposes, and that such use began in 1953 pursuant to an application approved on September 9, 1952, by the Oklahoma Planning and Resources Board.

After trial on the issue of a permanent injunction, the trial court found all issues of fact and law in favor of the defendant, filed findings of fact and conclusions of law, and entered judgment for the defendant.

From the trial court's judgment denying the injunction, and the order overruling a motion for new trial, the plaintiff perfected his appeal on the original record.

The findings of fact of the trial court as pertinent to this appeal reflect that the defendant's land is north of the plaintiff's land, upstream therefrom, and is near the north boundary of the watershed; that water falling upon defendant's land, and north thereof to the boundary of the watershed, collects and runs across defendant's land in "dry draws," small gulches, and definable channels; that these draws and channels do not flow continually but flow only intermittently for a short period of time after rainfall; that defendant has erected a dam to impound water on his property, which prevents the flow of this water onto and across plaintiff's property; that there is the same amount of watershed below defendant's dam, and above plaintiff's property, as there is above the defendant's dam; and that the defendant has not acted unreasonably in the construction of this dam and other conservation works.

In Wahby v. Renegar, 199 Okl. 191, 185 P.2d 184, this Court said: " * * * The rule is settled that, in actions of equitable cognizance, this court will examine the record and weigh the evidence, but will not reverse the findings and judgment of the trial court unless clearly against the weight thereof. Also settled is the rule that in actions of equitable cognizance the trial court's findings and judgment based upon conflicting evidence will not be disturbed on appeal because of the conflict in testimony, or because it is possible to draw another conclusion from the testimony." (Citations omitted.) See also, to the same effect Simmons, v. Simmons, Okl., 357 P.2d 949; York v.

York, Okl., 270 P.2d 656; Miller v. Miller, Okl., 261 P.2d 594.

The plaintiff contends that the judgment of the trial court is contrary to law. We disagree.

▆ The injunctive relief requested by the plaintiff was properly denied under the terms of Section 60 of Title 60 of the Oklahoma Statutes. This statute was amended in 1963 subsequent to the decision of the trial court in this case. Okl. Sess.Laws 1963, c. 205, § 1, p. 267. The parties disagree as to whether this Court on appeal may properly consider the effect of this amendment. Under the view we take of this case, it is unnecessary to decide this point. The determinative provision of Section 60 (the first sentence) was unchanged by the amendment and reads as follows:

"The owner of the land owns water standing thereon, or flowing over or under its surface, but not forming a definite stream. * * *"

▆ This provision vests the ownership of surface water upon the defendant's property in the defendant. We believe that the rights of the defendant to this surface water are well expressed by the following language from 93 C.J.S. Waters § 113:

"An owner of land owns its surface water by the same title as he owns the land itself, and he has the right to collect and appropriate it to his own use without liability to others. Riparian rights do not attach to surface waters, and a lower proprietor has no right to have surface water flow to his land from higher land."

▆ The plaintiff argues that the waters involved in this case are taken from a *definite stream* and that the plaintiff has a riparian right to the enjoyment of this stream. The trial court, however, determined that the water collected by the defendant's dam was not water from a *definite stream*. This determination is well supported by the evidence presented.

▆ The evidence established that northern-most boundary of the watershed is only one-half mile north of defendant's land and that water falling to the north thereof will run off in the other direction. The defendant's dam was built approximately in the middle of the defendant's property, about one mile south of the origin of the watershed and one-half mile north of plaintiff's property. Above the defendant's dam there is a series of dry draws and swales. While these shallow depressions are dry most of the time, during periods of heavy rainfall they fill and overflow in a southerly direction and this overflow along with other natural drainage from the defendant's watershed is captured by the defendant's dam. Below the dam of the defendant, and continuing across the property of the plaintiff, a natural drainway a few feet wide and deep has been cut into the land over a period of time by the flow of water following heavy rainfall. The evidence established that this channel never had water in it for more than two weeks at a time following heavy rains. Ordinarily the water flowed therein only for a period of days following a rainfall. Not every natural drainway is a definite stream within the meaning of our statute. We hold that the intermittent flow of surface water in a natural drainway for a period of a few days following heavy rainfall does not constitute a definite stream and riparian rights do not attach to such drainage.

▆ It is clear from the evidence that defendant's dam was built in a natural basin to collect and contain surface water primarily from his own watershed and, to a lesser degree, from the property adjoining to the north. This the defendant had a right to do even though it prevented such surface water from flowing through the natural drainway and onto the land of the plaintiff. As seen above, a lower land owner has no riparian right to the surface water of another.

Competent evidence was introduced by the defendant to establish that there is approximately as much of the watershed

area below defendant's dam as above it. It is apparent that the defendant is not taking the full amount of surface water that he is entitled to under the statute and that the amount of watershed below defendant's dam will continue to provide natural drainage onto the land of the plaintiff.

■ The defendant constructed this dam and lake under plans approved by the Soil Conservation Service. An official of the Oklahoma Water Resources Board testified that there were almost 200,000 farm ponds and lakes in Oklahoma at that time, the majority of which were built along dry draws, or gullies, or intermittent water channels, and that such lakes and ponds aided in flood control and erosion control and provided water for irrigation, domestic uses, and recreation. We recognize that such ponds and lakes are beneficial and should be encouraged where they do not unreasonably interfere with the rights of others. See 82 O.S.1961, §§ 455, 456.

The cases of Garrett v. Haworth, 183 Okl. 569, 83 P.2d 822, and Franks v. Rouse, 192 Okl. 520, 137 P.2d 899, cited by plaintiff, involve the question of whether one landowner may block a natural drainage course and cause water to back upon a neighbor's land to his damage, and so do not involve the issue in this case. Baker v. Ellis, Okl., 292 P.2d 1037, and Smith v. Stanolind Oil & Gas Co., 197 Okl. 499, 172 P.2d 1002, involve riparian rights upon permanently flowing streams and are not in point here.

The judgment of the trial court was correct in law and fact and should be, and is, affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACK-BIRD, IRWIN, BERRY, and HODGES JJ., concur.

This Court acknowledges the services of George H. Bowen who with the aid and counsel of John L. Arrington and J. Jerry Dickman as Special Masters, prepared a preliminary advisory opinion. These attorneys have been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to HODGES, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.